575 A.2d 40

PRINCETON HILL ASSOCIATES, PLAINTIFF–RESPONDENT, v.
REGINA N. LYNCH, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 25, 1990—Decided May 30, 1990.

Before Judges GAULKIN, DREIER and SCALERA.

*Regina N. Lynch Pro se.*

*Mandel, Berezin, Feinstein & Booker,* attorneys for respondent (*Bruce D. Hersh,* of counsel; *Rosalie C. Scheckel,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant appeals from the dismissal of her claim for the application of her security deposit against her current rent. On August 25, 1988, just prior to her moving into her new apartment, defendant gave plaintiff, her landlord, a $1,042.50 security deposit check. The lease, which ran from September 1988 to August 31, 1989, noted that defendant had a paid $1,042.50 security deposit, and the security deposit "has been placed in a trust account at Morris County Savings Bank." No further notice was given by the landlord or the depository bank until on or about February 1, 1989, when the tenant received an interest check from Morris County Savings Bank for $8.23. When the tenant inquired concerning the source of the funds, she was informed that the interest had been generated by her rental security account. However, the landlord had not opened the account until October 28, 1988, two months after the security was given.

*N.J.S.A.* 46:8–19 requires that a security deposit be placed in a bank within 30 days after receipt from the tenant. If notice of the name and address of the bank and the amount of the deposit is not given to the tenant, the tenant is given the right to have the security deposit applied to the rent, and the landlord is precluded from requiring any further security deposit from the tenant. Thus, while no monetary penalty is assessed against the landlord, the statute sanctions the landlord by removing the right to hold any security for the particular tenant.

While there is no claim here that the landlord invested the money itself for the two month period between the giving of the deposit and its being placed in the tenant's trust account, in

a large apartment complex with frequent turnover, a landlord could avail itself of a sizable bank balance by delaying the turnover even for this brief two month period.[1]

■ In their briefs, the parties have raised and answered the issue of whether the notice may be given by the bank or must come from the landlord itself. The parties were addressing the missing element of the address of the bank, not contained in the lease, but noted in the bank's later interest letter. We have no problem with a landlord having the depositary bank give the requisite notice as the landlord's agent, if the deposit is in fact made and the notice is given on time. Even if the notice is slightly deficient (such as here where the address of a well-known local bank had been left out of the lease), involuntary application of the deposit to the rent may be withheld by the court, after examining the relevant circumstances. The depositary here was not an obscure investment company or money market fund, which also may be an authorized depositary of the funds.

■ But here we have a more grievous deficiency. The real issue in this case is whether the statute would apply when the deposit itself has not been timely placed with the bank. We note that the statute does not expressly provide relief if the deposit has not been made; only when the notice has not been given. However, implicit in the notice requirement is that the notice be truthful. Of course, where the lease itself has given the notice, and the check for the security is given simultaneously with the signing, the deposit cannot already have been made. But where the security deposit is given to the landlord six days

---

[1]For example, a landlord of a 300 unit apartment complex with an average apartment occupancy of one year would receive approximately $300,000 in new security deposits each year. A landlord could earn $4,000 interest per year (at 8%) by leaving the deposits in its own account for two months and then placing them in the tenants' trust accounts. Even if kept in a landlord's non-interest-bearing checking account, the deposits could satisfy compensating balance requirements which banks often impose when making loans.

before the lease is to commence, the bank deposit should have been made by the commencement date, or certainly within the statutory 30-day period. If the deposit had been promptly made, the lease reference would have sufficed, since the tenant could have confirmed the deposit with a telephone call to the bank. The late deposit most probably vitiated any effect the lease notice might have had.

Defendant made a *prima facie* showing that she was entitled to have her security deposit applied to her rent, and this relief probably should have been ordered. However, the landlord has had no opportunity to present any evidence concerning any acceptable excuse for the late deposit, as a basis for an equitable relaxation of the seemingly mandatory language of the statute.[2] We therefore reverse the trial judge's denial of this relief, and remand the matter to the Special Civil Part for the purpose of allowing the landlord a hearing before deciding whether to direct application of the deposit as requested by defendant.

[2]For example, if the landlord had kept defendant's check for a two-month period because plaintiff's principal met with an accident or ailment and was physically unable to make the deposit, or if there were a like excuse, the trial court might properly deem enforcement inequitable. *Cf. Olympic Indust. Park v. P.L. Inc.,* 208 *N.J.Super.* 577, 506 *A.2d* 770 (App.Div.1986), certif. den. 104 *N.J.* 453, 517 *A.2d* 440 (1986).